**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

JESSICA L. MOREL,
          Appellant,

      v.

DEPARTMENT OF VETERANS
    AFFAIRS,
          Agency.

DOCKET NUMBER
DC-1221-19-0149-W-1

DATE: September 16, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Michelle F. Bercovici, Esquire, Kristin D. Alden, Esquire, and Elizabeth Paukstis, Esquire, Washington, D.C., for the appellant.

Timothy M. O'Boyle, Esquire, Hampton, Virginia, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and did not participate in the adjudication of this appeal.

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in this individual right of action (IRA)

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

appeal. For the reasons discussed below, we GRANT the appellant's petition for review. We MODIFY the initial decision to clarify and supplement the administrative judge's conclusion that the agency proved by clear and convincing evidence that it would have terminated the appellant during her probationary period absent the six whistleblowing disclosures identified in the initial decision. We FIND that the appellant nonfrivolously alleged that her additional patient rape and colostomy disclosures were protected under 5 U.S.C. § 2302(b)(8) and were a contributing factor in the agency's decision to terminate her during her probationary period. We REMAND the appeal to the administrative judge to reopen the record, allow the parties to engage in limited discovery, and present evidence and argument on the following issues: (1) whether the appellant proved by preponderant evidence that she made the alleged patient rape and colostomy disclosures, and those disclosures were protected and were a contributing factor in the agency's decision to terminate her during her probationary period; and (2) if so, whether the agency proved by clear and convincing evidence that it would have terminated the appellant during her probationary period absent her disclosures, including the colostomy and patient rape disclosures.

## BACKGROUND

The following facts, as recited in the initial decision, are generally undisputed. Initial Appeal File (IAF), Tab 68, Initial Decision (ID). The appellant was appointed to the Staff Psychiatrist position on July 9, 2017, subject to a 2-year probationary period. ID at 3; IAF, Tab 1 at 15, 19. On March 21, 2018, the appellant was notified that a Professional Standards Board (PSB) was convened to conduct a summary review of her employment during her probationary period and make recommendations concerning retention or separation from the agency.[2] ID at 23; IAF, Tab 1 at 78-80. The PSB ultimately

---

[2] The PSB was convened to review the following alleged deficiencies in the appellant's conduct: (1) deficiencies in her professional behavior; (2) failure to follow instructions; and (3) failure to be respectful in her treatment of patients, staff, and

recommended the appellant's separation during her probationary period, and the Chief of Staff and Director concurred. ID at 24; IAF, Tab 1 at 81-83. On April 6, 2018, the agency notified the appellant that her employment would be terminated, effective April 20, 2018. ID at 3; IAF, Tab 1 at 15-16. The appellant filed this IRA appeal. ID at 1, 3; IAF, Tab 1. The administrative judge accepted six out of the appellant's eleven disclosures as meeting the jurisdictional threshold of a reasonable belief of a disclosure under 5 U.S.C. § 2302(b)(8). IAF, Tab 13. A 3-day hearing was held. Hearing Transcripts (HTs) 1-3.

The administrative judge issued an initial decision, finding that (1) the Board has jurisdiction over the appeal, (2) the appellant presented preponderant evidence that she made six whistleblowing disclosures that were a contributing factor in her probationary termination, (3) she did not present preponderant evidence that she was subjected to a hostile work environment, and (4) the agency proved by clear and convincing evidence that it would have terminated the appellant during her probationary period notwithstanding her whistleblowing disclosures. ID at 3-73. Therefore, the administrative judge denied the appellant's request for corrective action. ID at 73.

The appellant has filed a petition for review, the agency has filed a response, and the appellant has filed a reply. Petition for Review (PFR) File, Tabs 9, 11-12.

## DISCUSSION OF ARGUMENTS ON REVIEW

To establish a prima facie case of retaliation for whistleblowing disclosures, the appellant must prove by preponderant evidence that she made a protected disclosure that was a contributing factor in a personnel action taken against her. 5 U.S.C. § 1221(e)(1); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). If the appellant meets this burden, the agency is given an opportunity to prove by clear and convincing evidence that it would

_____

others. IAF, Tab 1 at 78-80.

have terminated her during her probationary period in the absence of the whistleblowing disclosures. 5 U.S.C. § 1221(e)(1)-(2); *Lu*, 122 M.S.P.R. 335, ¶ 7.

We affirm the administrative judge's finding that the six whistleblowing disclosures identified in the initial decision were protected and were a contributing factor in the agency's decision to terminate the appellant during her probationary period.

In the initial decision, the administrative judge identified and analyzed the following disclosures: (1) an October 4, 2017 report about social worker C.W.'s violation of state guardianship laws to Dr. E.M. (the appellant's first-line supervisor); (2) a December 6, 2017 report to Dr. D.D. (the appellant's second-line supervisor),[3] Dr. A.K., Dr. E.M., and agency regional counsel regarding the various ways in which the medical center psychiatric inpatient unit was violating laws relating to involuntary commitments; (3) a January 11, 2018 report to Dr. D.D. and Dr. E.M. regarding voluntary commitments being unlawfully transferred like involuntary commitments; (4) a February 14, 2018 disclosure regarding the unit's violation of state guardianship laws because of its failure to ensure that the courts were exercising proper oversight over the admission of patients through guardians; (5) a March 13, 2018 report to Dr. D.D. regarding the unit's continued failure to comply with state guardianship laws and improper admission of patients; and (6) a March 15, 2018 report to Dr. D.D. regarding the unit's continued failure to comply with state guardianship laws and improper admission of patients.[4] ID at 4; IAF, Tab 13 at 3-4. The administrative judge found that each of these disclosures was a protected whistleblowing disclosure that was a contributing factor in the appellant's termination during her

---

[3] Dr. D.D. would later become the appellant's first-line supervisor after Dr. E.M. left his position.

[4] Below, the administrative judge considered disclosures (5) and (6) together. IAF, Tab 13 at 4; ID at 4. For completeness, we consider them separately.

probationary period. ID at 4-20. The agency does not challenge these determinations on review, and we affirm them herein.[5]

<u>We affirm as modified the administrative judge's conclusion that the agency proved by clear and convincing evidence that it would have terminated the appellant during her probationary period absent the six whistleblowing disclosures identified in the initial decision.</u>

In determining whether an agency has shown by clear and convincing evidence[6] that it would have taken the same personnel action in the absence of whistleblowing disclosures, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has instructed the Board to "evaluate all the pertinent evidence in determining whether an element of a claim or defense has been proven adequately." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

The appellant argues that the administrative judge's clear and convincing analysis was fundamentally flawed. PFR File, Tab 9 at 32-63. In particular, the appellant contends that the administrative judge improperly evaluated the first and second *Carr* factors. *Id.* at 34-63. We agree that the administrative judge's

---

[5] The appellant does not challenge the administrative judge's determination that she did not prove by preponderant evidence that she suffered a hostile work environment. We affirm the initial decision in this regard.

[6] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e). It is a higher standard than a preponderance of the evidence, which is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. *Id.*; 5 C.F.R. § 1201.4(q).

evaluation of the *Carr* factors was deficient. Indeed, the administrative judge did not cite to *Carr* or another case that identified these factors, nor did he explicitly identify these factors in the initial decision. It appears, however, that he at least implicitly considered these factors. ID at 59-73. Accordingly, we modify the initial decision to clarify and supplement the administrative judge's analysis of the *Carr* factors.

> *Carr factor 1 strongly favors the agency.*

The initial decision contains a lengthy recitation of the evidence in the record. *E.g.*, ID at 6-18, 20-70. The administrative judge noted the PSB Chair's testimony that the PSB determined unanimously that the appellant's behavior was unbecoming of a medical staff member and was inconsistent with the agency's mission, and the PSB recommended that the appellant be terminated during her probationary period because she was unable to work with a team in an inpatient setting. ID at 60-61. The administrative judge found "significant" the appellant's testimony that she was presented with "a document listing grievances for the whole time of [her] employment from the social workers," which the administrative judge concluded was "strong evidence" that her disclosures were not the basis for her termination. ID at 70 (citing HT 1 at 160 (testimony of the appellant)). The administrative judge noted that the evidence accumulated "from [the appellant's] first day . . . represented the opinions of a broad-based population of disaffected and antagonistic nurses, social workers[,] and other staff," which led the PSB to conclude that the appellant failed to meet the professionalism standard expected of agency employees. ID at 70.

We state at the outset that the agency's evidence in support of termination is strong. We have considered the evidence in the PSB file and the other documentary evidence and testimony given below. We disagree with the appellant that the agency's evidence did not justify her termination. PFR File, Tab 9 at 45-53. Rather, there is extensive testimonial and documentary evidence, as discussed in the initial decision and herein, regarding the appellant's 9-month

tenure as Staff Psychiatrist to support the agency's decision to terminate her based on her unprofessional behavior and interactions with staff and patients. IAF, Tab 59; *e.g.*, ID at 6-18, 20-73. On review, the appellant makes a number of arguments regarding process and the agency's evidence. We have considered each of these arguments, but none warrants a different outcome.

For example, the appellant challenges the PSB notice itself, arguing that the defective notice calls into question the strength of the agency's evidence. PFR File, Tab 9 at 43-45 (citing *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285 (2013)). We agree with the appellant that the agency's PSB notice is problematic because it only identified the three alleged deficiencies, *supra* n.2, but it did not provide any examples or context to describe them. PFR File, Tab 9 at 44; IAF, Tab 1 at 78-80; *see* IAF, Tab 40 at 8 (explaining in the agency Handbook that the PSB notice should provide the "reasons why the [PSB] is being done with sufficient detail for the employee to clearly understand why he or she may not be fully qualified and satisfactory"). Rather, the appellant was evidently required to glean, through the approximately 100-page PSB file, which she had to separately request, the underlying factual basis for the alleged deficiencies. HT 1 at 151 (testimony of the appellant); IAF, Tab 33 at 58-67, Tab 40 at 8. The appellant's reliance on *Chavez* is not persuasive. There, the Board concluded that an agency's failure to provide a procedurally adequate *termination* notice did not, by itself, indicate that the agency lacked evidence in support of its action. *Chavez,* 120 M.S.P.R. 285, ¶ 30. Even if we assumed for the purposes of our analysis that the precedent in *Chavez* is applicable to the agency's procedurally inadequate PSB notice, we similarly find that such evidence, standing alone, does not warrant the conclusion that the agency lacked evidence in support of the action.

The appellant also challenges the contents of the PSB file. PFR File, Tab 9 at 45-53. The appellant raised many, if not all, of these arguments in her closing submission, IAF, Tab 67 at 7-9. The administrative judge acknowledged in the

initial decision the appellant's testimony that the PSB evidence file included her disclosures about the involuntary commitment process, and as noted above, he found "strong evidence" that her disclosures were not the basis for her termination. ID at 24-25, 70. Additionally, he acknowledged the record evidence concerning other parts of the PSB file, including the ethics consults that she filed against other providers, her evaluations, various memoranda written by her coworkers documenting their interactions with her, and Disruptive Behavior Committee (DBC) reports.[7] *E.g.*, ID at 20-22, 36, 43-44, 47-50, 57, 64-65, 67-69. The administrative judge ultimately concluded that the appellant's argument that the PSB recommendation was based on flawed evidence failed to show that her disclosures contributed to it. ID at 72. In this regard, he noted that the evidence existed,[8] the PSB accepted it, and it originated and accumulated independently from the appellant's disclosures. ID at 72-73. We interpret the initial decision as the administrative judge rejecting the appellant's arguments regarding the evidence in the PSB file. Nevertheless, we will address some of the appellant's arguments to clarify the evidence that we have considered in reaching our conclusion that the agency's evidence is strong.

Regarding the February 13, 2018 unsatisfactory proficiency report, which cited "validated inappropriate interactions with co-workers, supervisors[,] and others," the appellant asserts that the PSB file omitted the evidence relied upon by Dr. E.M. in this report, Dr. D.D. failed to include her "successful" October

---

[7] DBC reports are reports that the appellant submitted about patients' disruptive behavior.

[8] The appellant asserts that the administrative judge's analysis ignores the Federal Circuit's directive from *Miller v. Department of Justice*, 842 F.3d 1252, 1259 (Fed. Cir. 2016), i.e., that the Board's focus should not be "whether the agency has put forward some evidence purporting to show independent causation" but instead should be "whether such evidence is strong." PFR File, Tab 9 at 34. Even if the administrative judge committed an error in this regard, such error is not prejudicial to the appellant's substantive rights and provides no basis for reversal of the initial decision. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984). As discussed herein, we find that the agency's evidence in support of termination is strong.

2017 proficiency report and altered the second proficiency report to cover the same time frame as the earlier proficiency report, and the agency failed to follow its own procedures in issuing its evaluations of her. PFR File, Tab 9 at 46-47; IAF, Tab 59 at 6-7. She asserts that this circumstantial evidence undercuts the strength of the agency's evidence. PFR File, Tab 9 at 47.

As part of our analysis of the strength of the agency's evidence, we have considered the following evaluations: (1) the overall satisfactory October 2017 proficiency report, which covered the time period from July 9, 2017, to September 30, 2017, and which noted among other things that the appellant's clinical skills are "satisfactory," she "effectively treats all psychiatric conditions," and "at times" the appellant "has had friction with other team members," IAF, Tab 1 at 76-77; (2) the February 7, 2018 Focused Professional Performance Evaluation (FPPE), which covered the time frame of July 31, 2017, to February 1, 2018, and which the appellant passed except for a professionalism subset entitled "Respectful treatment of Patients, Staff[,] [and] Others,"[9] IAF, Tab 59 at 181-82; and (3) the February 13, 2018 (second) proficiency report, which covered the time period of July 9, 2017, to February 13, 2018, and for which the appellant was rated unsatisfactory overall,[10] IAF, Tab 59 at 6-7. We recognize that there were some irregularities in the timing of some of the agency's evaluations of the appellant, due in part to the fact that Dr. E.M. left his position as her first-line supervisor, but we are not persuaded that any such irregularities change our evaluation of this *Carr* factor. The purpose of the probationary period is to "as fully as possible" determine an employee's "fitness"

_____

[9] The basis of the rating in this subset was because the agency has a cut-off of three occurrences of "validated complaints from patients, staff, or other providers," and the appellant received six verified complaints during the relevant time period. IAF, Tab 59 at 181; HT 3 at 783-84 (testimony of Dr. E.M.).

[10] Specifically, the appellant was "deemed satisfactory or better in all categories except Personal Qualities," which resulted in the unsatisfactory rating. IAF, Tab 59 at 6. The interim rating was "based on validated inappropriate interactions with co-workers, supervisors[,] and others." *Id.*

and "terminate [a probationer's] services during this period if the employee fails to demonstrate fully [her] qualifications for continued employment." 5 C.F.R. § 315.803(a). Therefore, it is appropriate for the agency to consider (and reconsider) any issues that arose regarding the appellant's performance or potential misconduct to enable it to determine if she was qualified for the Staff Psychiatrist position.[11]

The appellant also contends that portions of the PSB file "consist[] exclusively of written complaints that [Dr. D.D.] created and solicited immediately following" her February 13, 2018 disclosure, and she alleges that such evidence was not credible because it included post hoc and hearsay reports. PFR File, Tab 9 at 47-52; IAF, Tab 59 at 9-23. We will not categorically dismiss evidence—even evidence that was compiled after the appellant made her disclosures and/or hearsay evidence—because to do so would violate the directive that we "evaluate all of the pertinent evidence in determining whether an element or a claim or defense has been proven adequately." *Whitmore*, 680 F.3d at 1368. Moreover, it is well established that hearsay evidence is admissible in Board proceedings. *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-84 (1981). The assessment of its probative value necessarily depends on the circumstances of each case. *Id.* Here, the existence of evidence dated after the appellant made the February 13, 2018 disclosure and which may have contained some hearsay evidence does not warrant a different outcome because is it largely consistent with the testimonial evidence and documentary record as a whole.

For example, we have considered the appellant's argument that the March 1, 2018 memorandum, which allegedly memorialized a meeting between Dr. D.D. and several social workers, is "inherently suspicious and incredible" and was disavowed by the social workers who signed it. PFR File, Tab 9 at 27, 47,

---

[11] Because of the significance of the probationary period in this regard, we disagree with the appellant's characterization that the agency resurrected closed issues in her subsequent evaluations or her assertion that the administrative judge ignored the agency's pretextual resurrection of closed issues. PFR File, Tab 9 at 41-42.

50. This memorandum stated that the appellant could be "rigid," "'adamant' when having a point of view," "not open to . . . feedback from any team members," "confrontational" with a patient, and generally raised concerns about how the appellant treated patients with substance abuse issues.[12] PFR File, Tab 9 at 50; IAF, Tab 59 at 21-22. Significantly, L.R., who signed the March 1, 2018 memorandum, provided first-hand testimony that the appellant was "reactive," "confrontational," "harsh" and "stern" towards a patient, and "intimidating," and she affirmed that the appellant was "assertive [to nurses] to the point of being inappropriate." HT 2 at 508-10, 519-20, 539-40 (testimony of L.R.). S.S., who also signed the March 1, 2018 memorandum, testified in her deposition[13] that the appellant told a veteran he was "not depressed" after he said he was depressed, and she observed the appellant berate a resident because the resident disagreed with her. IAF, Tab 56 at 10 (deposition testimony of S.S.). S.S. testified that she had "concerns" about the appellant's interactions with veterans "because they were not respectful." *Id.* at 11 (deposition testimony of S.S.). She also acknowledged that she had concerns about the way that the appellant treats patients with substance abuse issues, although she admitted that she did not remember if she raised that concern during the March 1, 2018 meeting. *Id.* at 22 (deposition testimony of S.S.). T.V., another signatory to the March 1, 2018 memorandum, testified that the work environment was "hostile." HT 2 at 674 (testimony of T.V.). T.V. also testified that the appellant was "rigid," "did not run a team atmosphere," "had a hard time listening to others," and her "personality did not go with the team." HT 2 at 679, 728 (testimony of T.V.).

---

[12] The appellant identifies various discrepancies such as who convened the March 1, 2018 meeting, who authored the memorandum of that same date, and which attendee said what during the meeting. PFR File, Tab 9 at 27, 50. However, in light of the testimony that we have cited herein and the nearly 17-19 months that had passed between when the memorandum was signed and the testimony was given, such discrepancies do not detract from the overall import of the memorandum.

[13] The parties agreed to substitute S.S.'s deposition testimony for live testimony. HT 1 at 15-19.

Based on this testimony, we are not persuaded that any social worker disavowed this memorandum or that the memorandum itself was suspicious or incredible. We have considered the appellant's arguments regarding other memoranda or correspondence documenting staff's interactions with the appellant, but we are not persuaded that their inclusion in the PSB file was improper.

Likewise, we have considered and reject the appellant's arguments involving the inclusion of DBC reports, ethics consults, and "emails and communications detailing [the a]ppellant's whistleblowing activities and their impact."[14] Significantly, the appellant has not cited to any agency policy or rule that prohibits such information being presented to the PSB. Moreover, the whistleblower protection statutes are not meant to protect individuals from their own misconduct. *Carr*, 185 F.3d at 1326. In this regard, the PSB Chair testified that the appellant talked to the Board members about involuntary commitments and guardianship issues, but the focus of the PSB's review was the appellant's "behavior" and those other issues had no effect on the PSB deliberations. HT 2 at 562, 603 (testimony of the PSB Chair).

The appellant also argues on review that the administrative judge made numerous errors in his analysis. For example, she asserts that the administrative judge ignored evidence that Dr. D.D. and Dr. E.M. "hunted" for evidence immediately after she escalated her disclosures to regional counsel on December 6, 2017. PFR File, Tab 9 at 38-39. However, and as discussed in the

---

[14] The appellant had an opportunity to "[r]espond orally and/or in writing to the PSB," IAF, Tab 1 at 78, but she did not submit any documentation in advance of the PSB because she "was never given an explanation as to why [she] was being brought in front of the Board" and it would be "difficult" to respond to the PSB file "without an explanation of what . . . those hundreds of pages meant," HT 1 at 152-53 (testimony of the appellant); HT 2 at 561-62 (testimony of the PSB Chair). In her testimony below, the appellant explained that she testified before the PSB that the agency retaliated against her for her disclosures, and she questioned the relevance and/or veracity of some of the evidence submitted to the PSB. HT 1 at 153-55 (testimony of the appellant). She also testified that she tried to provide the PSB with evidence to refute her failed FPPE, but the PSB would not accept it into the record because they were not submitted in advance. *Id.* at 155 (testimony of the appellant).

initial decision, the record reflects that complaints against the appellant were raised before she made this disclosure. ID at 26, 29-30, 55-56, 62-64; *see, e.g.*, IAF, Tab 1 at 76-77 (the appellant's October 2017 proficiency report noting that the appellant "has had friction with other team members"), Tab 32 at 15-21 (the appellant's response to the reports of contact filed against her after she filed the ethics consults against other providers), Tab 59 at 44, 48-50 (reports of contact regarding ethics consults); HT 3 at 986-87 (testifying that "[v]ery shortly" after the appellant arrived in the unit, the nurses reported that the appellant said that their "contribution to morning rounds was irrelevant") (testimony of Dr. D.D.).

The appellant also argues that the administrative judge's decision to "blindly credit" the testimony of agency officials "vastly overestimates" the strength of the agency's evidence.[15] PFR File, Tab 9 at 35. She also asserts that the administrative judge "ignored credible evidence"—namely the testimony of three nurse witnesses—regarding their positive working interactions with her. *Id.* at 36-37; *see, e.g.*, *Whitmore*, 680 F.3d at 1368 (cautioning that the Board's decision will be vacated and remanded if "considerable countervailing evidence is manifestly ignored or disregarded").

We do not agree with the appellant's assertion that the administrative judge "blindly credit[ed]" the testimony of agency officials. Rather, the administrative judge, in his lengthy initial decision, thoroughly and objectively described the testimonial evidence. ID at 6-18, 20-70. The appellant even acknowledges on review that the administrative judge discussed the positive testimony of the three nurses in the initial decision, PFR File, Tab 9 at 36-37, although he did not specifically do so in his clear and convincing analysis. We supplement the initial decision to specifically consider the testimony of these three nurses in our

---

[15] The appellant also asserts that the administrative judge failed to make "a single credibility determination." PFR File, Tab 9 at 11, 30-31. We are not persuaded that the administrative judge committed any error in this regard. Indeed, as evidenced from this matter, it is possible that different people could have different points of view on the same incidents or interactions involving the appellant. We need not resolve such different responses to properly evaluate the strength of the agency's evidence.

evaluation of the strength of the agency's evidence. The administrative judge noted that these witnesses testified that the appellant was, among other things, "pleasant," "a good doctor who addressed issues that required attention," "assertive but not argumentative," "appropriate and professional in her treatment of staff and patients," and never "unprofessional[]" or "dismissive toward the nursing staff." ID at 14, 27-29.

The appellant further asserts that the administrative judge erred when he concluded that the PSB's decision was independent from the "poisoned" PSB evidence file. PFR File, Tab 9 at 53-54. In this regard, she asserts that the administrative judge erred in finding that the PSB "verified" the evidence before it when the PSB Chair "conceded" that it did not verify or confirm this evidence. *Id*. at 53 (citing HT 2 at 581-82). Significantly, the cited pages do not show such testimony.[16] Moreover, because we do not find that the PSB evidence file contained any improper evidence, the appellant had an opportunity to provide a written and/or oral response to the PSB, and she appeared before the PSB, we do not agree that the administrative judge erred in his conclusion in this regard.

We have also considered the appellant's argument that the administrative judge failed to consider the extent to which discord between the social workers and nurse managers was the result of staff's hostile reaction to the appellant's disclosures. PFR File, Tab 9 at 42-43. She notes that, in *Chavez*, the Board found that the administrative judge overestimated the strength of the agency's evidence in support of its decision to terminate Ms. Chavez during her probationary period because the administrative judge did not consider such evidence, among other things. *Id.* (citing *Chavez*, 120 M.S.P.R. 285, ¶¶ 28-31). In contrast to *Chavez*, the administrative judge acknowledged the disagreements between the appellant and social workers and nurse staff, and he considered and

---

[16] Rather, the PSB Chair testified that the PSB typically calls employees to speak to it in order to "verify reports of contact to the evidence file [it] had, to add anything that they felt was needed, and for [the PSB members] to question if there was anything in there that might not be clear." HT 2 at 588 (testimony of the PSB Chair).

rejected the notion that the appellant's disclosures regarding involuntary commitments led the staff to complain about her professionalism and tact. ID at 70-73. Moreover, this matter is factually distinguishable from *Chavez*. Ms. Chavez had "excellent performance," *Chavez*, 120 M.S.P.R. 285, ¶ 31, whereas the appellant's evaluations ranged from satisfactory to unsatisfactory, IAF, Tab 32 at 13-14, Tab 59 at 6-7, 181-82.

We have also considered countervailing evidence in our analysis of this *Carr* factor. For example, we have considered the favorable testimony of the three nurses, discussed above. Additionally, we have considered that the PSB evidence file failed to include the I-CARE award that the appellant received, her satisfactory 2017 proficiency report, and her responses to an earlier fact-finding involving complaints against her.[17] PFR File, Tab 9 at 53 n.27; ID at 53-54; IAF, Tab 32 at 13-21, Tab 33 at 23.

We have considered the appellant's remaining arguments on review, but none warrant a different outcome.[18] In conclusion, and notwithstanding the

---

[17] The appellant asserts that the agency must prove its three charges against her by clear and convincing evidence. PFR File, Tab 9 at 33. However, the appellant cites to no case law to support this proposition, and we know of none. Nevertheless, it does not appear from our review of the record that there was any evidence presented at the PSB involving the appellant's failure to follow instructions (deficiency (2)). *Id*. at 34-35. Indeed, the agency's prehearing submission, its closing brief, and its response to the petition for review do not clearly identify any instruction that the appellant failed to follow. IAF, Tabs 30, 66; PFR File, Tab 10.

[18] For example, the appellant contends that the initial decision fails to hold the agency to the required burden of proof. PFR File, Tab 9 at 33-34. In this regard, the appellant contends that the administrative judge erroneously applied the standard for chapter 75 adverse action appeals, not the clear and convincing standard applicable in IRA appeals. *Id*. It appears that this argument refers to the following statement made by the administrative judge in the context of a discussion of the appellant's argument that the PSB recommendation was based on flawed evidence: "Even if the evidence of dismissive treatment toward nurses or harsh conduct toward social workers *may not rise above a preponderance*, that [sic] is not the question presented in this [IRA] appeal." ID at 72 (citations added). We are not certain what the administrative judge meant by this statement, but it does not warrant a different outcome. We have reviewed the record, and we find that the agency proved by clear and convincing evidence that it would have terminated the appellant during her probationary period absent the six disclosures discussed herein.

deficiencies in the PSB notice, and the countervailing evidence, there is considerable credible evidence, including first-hand testimonial evidence, from social workers and other staff to support the agency's decision to terminate the appellant during her probationary period due to her professional behavior, including her interactions with social workers, nurses, and patients. We ultimately conclude that the agency's evidence in support of termination is strong. Thus, this *Carr* factor strongly favors the agency.

*Carr factor 2 strongly favors the appellant.*

The administrative judge made the following findings regarding motive to retaliate: (1) any argument that Dr. D.D. manipulated the PSB process is "extremely weak" considering the lack of retaliatory motive by Dr. D.D. herself and the three levels of independent review between the referral to the PSB, the recommendation to the Chief of Staff, and the final decision by the Director; (2) there was "no evidence" of a motive to retaliate for the appellant's concerns over alleged failings in the hospital's involuntary commitment processes or policies; (3) there was no nexus between any of the appellant's disclosures and the Director's decision to terminate her probationary appointment; and (4) the nurses and social workers who gave evidence to the PSB were motivated by considerations "wholly independent" of the appellant's disclosures. ID at 70-72.

On review, the appellant asserts that the administrative judge limited his analysis of motive to the PSB and approving officials, he made multiple errors of law and fact regarding the managers' motive to retaliate, and he ignored evidence of Dr. D.D.'s motive to retaliate. PFR File, Tab 9 at 55-63. She also asserts that retaliatory motive may be imputed to the deciding official when an individual with knowledge of the protected activity and a motive to retaliate influenced the deciding official. *Id.* at 54 (citing *Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014)). We modify the initial decision to clarify and supplement the administrative judge's analysis of this *Carr* factor.

In contrast to the administrative judge, we find, based on our review of the record, the gravity of the appellant's six whistleblowing disclosures, and the possible exposure to the agency revealed by the appellant's disclosures, that there could be a motive to retaliate by Dr. D.D., the PSB members, the Chief of Staff, and the Director. *See, e.g.*, *Whitmore*, 680 F.3d at 1370 ("Those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees.").

It is true, as the administrative judge noted below, that Dr. D.D. accepted the appellant's disclosures about the hospital's involuntary commitment policy and its guardianship processes, and the agency acted favorably upon them by convening trainings on the subjects raised by the appellant, authorizing outreach and educational communications with the magistrate court to correct and update policies, and working to develop policy statements to comply with the law. ID at 71. However, these actions do not necessarily diminish the strength of the motive to retaliate, particularly where these disclosures brought greater visibility to the appellant's unit, the medical center, and Dr. D.D. in particular. Thus, we find that Dr. D.D. could have a strong motive to retaliate. Moreover, as the person responsible for compiling the PSB file, Dr. D.D.'s motive could have influenced the PSB, Chief of Staff, and/or the Director. *See, e.g.*, *Mangano v. Department of Veterans Affairs*, 109 M.S.P.R. 658, ¶ 30 (2008) (explaining that, in examining retaliatory motive for an agency action, the officials involved in the action may include other officials upon whom the proposing or deciding officials relied for information).

We also agree with the appellant that the serious allegations contained in her various disclosures could create a motive to retaliate among some of her coworkers. The appellant specifically named C.W. in one of her disclosures, and her other disclosures regarding the involuntary commitment and guardianship

policies and processes may implicate or affect other social workers, nurses, and/or agency officials. The appellant's coworkers who could be implicated or affected by the disclosures either provided testimony directly to the PSB or were identified in the PSB file, and that could have influenced the PSB's recommendation and the agency's ultimate decision to terminate the appellant during her probationary period. For these reasons, we find that this *Carr* factor strongly favors the appellant.

*Carr factor 3 slightly favors the agency.*

The administrative judge discussed some evidence relating to the third *Carr* factor in the initial decision. ID at 61. For example, the PSB Chair testified that an earlier PSB recommended—and the Director upheld—a radiologist for termination during his probationary period because he failed to keep up on his readings, causing a delay in patient care. *Id.*; *see* HT 2 at 567-68 (testifying that the radiologist failed to work within the team structure of his service and did not help out when needed, which the PSB considered professional misconduct) (testimony of J.H.).[19] There is no evidence that the radiologist was a whistleblower. In her petition for review, the appellant does not raise any error on review regarding the administrative judge's recitation of this evidence relating to *Carr* factor three, but in her reply brief, she asserts that the agency never proffered colorable evidence on this *Carr* factor. We disagree. We modify the initial decision to find explicitly that the third *Carr* factor slightly favors the agency.

---

[19] The administrative judge also noted in the initial decision that the PSB Chair testified that a subsequent PSB recommended termination of another doctor who would not work with the nurses or with a team. ID at 61; HT 2 at 569-70 (testimony of J.H.); IAF, Tab 30 at 95-96. However, it appears that this termination occurred approximately a year after the appellant's termination, and the administrative judge sustained the appellant's objection to further testimony in this regard. HT 2 at 569-73 (testimony of J.H.). We do not consider this evidence in our analysis of this *Carr* factor, and we modify the initial decision accordingly.

*Conclusion*

We find that first *Carr* factor—the strength of the agency's evidence—far outweighs the other *Carr* factors.[20] We are left with a firm belief that the agency would have terminated the appellant during her probationary period absent the six whistleblowing disclosures discussed in the initial decision. Accordingly, we conclude that the agency satisfied its clear and convincing burden in this regard, and we affirm as modified the administrative judge's decision to deny corrective action.

<u>The appellant nonfrivolously alleged that she made two additional whistleblowing disclosures.</u>

On review, the appellant contends that the administrative judge erred in rejecting two disclosures that she made on December 27, 2017, one involving an allegation that a patient was raped and one involving the agency's failure to properly care for a colostomy patient.[21] PFR File, Tab 9 at 64-69. Because the administrative judge rejected these allegations at the jurisdictional stage, we must now determine if the appellant made a nonfrivolous allegation that (1) she reasonably believed that her disclosures evidenced one of the circumstances described in 5 U.S.C. § 2302(b)(8) and (2) the disclosures were a contributing factor in the agency's decision to take a personnel action against her.[22] *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 6 (2016). A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. *Id.*; *see* 5 C.F.R. § 1201.4(s) (explaining that an allegation generally will be considered

---

[20] This would be true even if we determined that the third *Carr* factor favored the appellant.

[21] The appellant does not challenge the administrative judge's finding that her other disclosures did not meet the jurisdictional threshold of a reasonable belief of a disclosure under 5 U.S.C. § 2302(b)(8), IAF, Tab 13, and we do not address any of the other disclosures on review.

[22] There is also a requirement to prove administrative exhaustion with the Office of Special Counsel, but the administrative judge found that this requirement was satisfied. IAF, Tab 13 at 1-2.

nonfrivolous when, under oath or penalty of perjury, an individual makes an allegation that is more than conclusory, is plausible on its face, and is material to the legal issues in the appeal). Whether allegations are nonfrivolous is determined on the basis of the written record. *Bradley*, 123 M.S.P.R. 547, ¶ 6. Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction. *Id.*

The proper test for determining whether an employee had a reasonable belief that her disclosures revealed misconduct prohibited under the whistleblower protection statutes, is this: Could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the Government evidence wrongdoing as defined by the whistleblower protection statutes? *Lachance v. White*, 174 F.3d 1378 (Fed. Cir. 1999); *Bradley*, 123 M.S.P.R. 547, ¶ 7.

The appellant described the patient rape disclosure as follows:

> [The a]ppellant reported a patient's allegations of rape to Dr. [D.D.] and Nurse Manager [C.B.]. [Nurse Manager C.B.] and Dr. [D.D.] insisted, erroneously, that there was no Agency policy in regards to reporting such patient rape allegations and had the patient's phone calls blocked so that she could not call the police. [The a]ppellant reported the patient's allegations to [the agency] police.

IAF, Tab 7 at 8-9. The administrative judge noted that the appellant's own words reflect that the disclosure involved a disagreement over policy, and her disagreement with her supervisors about the policy was not a protected disclosure. IAF, Tab 13 at 5-6. The appellant asked the administrative judge to reconsider his finding below, arguing, among other things, that her disclosure was to agency police, not to other agency employees. IAF, Tab 36 at 5 n.2, 13 n.5. The administrative judge did not change his prior ruling that the disclosure related to an internal policy disagreement, not a law, rule, or regulation. IAF, Tab 42 at 3. The appellant reasserts on review that the "core" of the disclosure

was her report to the police, not the policy dispute over the agency's protocols. PFR File, Tab 9 at 64-65.

The administrative judge's confusion about the nature of the appellant's disclosure is somewhat understandable because she does use the word "policy" in her disclosure. Moreover, in her statement of jurisdiction, the appellant cited to agency directive 2012-026, which appears to be the agency's policy regarding sexual assaults. IAF, Tab 7 at 18-19, 221. However, the Federal Circuit stated that in enacting the Whistleblower Protection Enhancement Act of 2012, "Congress made clear that policy decisions and disclosable misconduct . . . are not mutually exclusive." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1371 (Fed. Cir. 2020). More importantly, and independent of any policy disagreement, the appellant disclosed to both agency officials and the police that a patient was raped. An assault is a violation of criminal law, and a disclosure that an assault occurred is a disclosure of a violation of law, rule, or regulation. *Lewis v. Department of Commerce*, 101 M.S.P.R. 6, ¶ 11 (2005). Accordingly, we find that the appellant nonfrivolously alleged that the patient rape disclosure was protected. We reverse the administrative judge's decision in this regard.

In the colostomy disclosure, the appellant stated that she "reported to Dr. [D.D.] her declination of admission of a colostomy patient to the unit because of the unit's lack of fitness for caring for such a patient, as evidenced by its struggles to care for another colostomy patient on or about November 2017." IAF, Tab 7 at 9, Tab 59 at 12. The email containing the disclosure explained that the prior colostomy patient "was dropping feces around the unit as he walked and was sleeping in a bed full of feces every morning." IAF, Tab 59 at 12. The administrative judge characterized this disclosure as a policy disagreement between the activities of social workers and discretionary medical determinations, and he concluded that philosophical or policy disagreements with an agency decision or action are not protected unless they separately constitute a protected disclosure of one of the categories of wrongdoing listed in section 5 U.S.C.

§ 2302(b)(8)(A). IAF, Tab 13 at 4-5 (citing *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 8 (2015)).

On review, the appellant asserts that the core of this disclosure involved a direct and specific danger to patient health because the unit nurses failed to properly treat a prior colostomy patient. PFR File, Tab 9 at 65-68. She contends that similar failures in patient care were found protected by the Board in *Chavez*. *Id.* at 68. In *Chavez*, 120 M.S.P.R. 285, ¶¶ 21, 26, the Board found that Ms. Chavez's disclosures, involving failure to change patient dressings and allowing a patient to lay in his feces for over 6 hours, were both protected whistleblowing disclosures involving a substantial and specific danger to public health or safety. In particular, the Board in *Chavez* held that, regardless of whether the patients in question actually suffered harm, it is readily foreseeable that failure to change a patient's dressings and letting an ill person lay in his feces for 6 hours could result in an infection. *Id.*

This disclosure presents a much closer call than the patient rape disclosure. Ms. Chavez's disclosures regarding nurses not changing the patient dressings and a patient being left to lay in his feces appear to have been made within 24 hours of her observation of these events, *Chavez*, 120 M.S.P.R. 285, ¶¶ 10-11, 21, 26, whereas the appellant's disclosure was made approximately 1 month after she observed the agency's alleged inability to care for a prior colostomy patient. Nevertheless, despite this difference in timing, we find that the appellant nonfrivolously alleged that she disclosed a substantial and specific danger to public health or safety, and we reverse the administrative judge's decision in this regard.

The appellant nonfrivolously alleged that the patient rape and colostomy disclosures were a contributing factor in the agency's decision to terminate her during her probationary period, and we remand the appeal for further adjudication of these claims.

One way of proving that the appellant's whistleblowing disclosures were a contributing factor in the personnel action is the "knowledge/timing test." *Alarid*

*v. Department of the Army*, 122 M.S.P.R. 600, ¶ 13 (2015) (citing *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 22 (2013)). The knowledge/timing test allows an employee to demonstrate that the whistleblowing disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the whistleblowing disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the whistleblowing disclosure was a contributing factor in the personnel action. *Alarid*, 122 M.S.P.R. 600, ¶ 13; *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 11 (2003); *see* 5 U.S.C. § 1221(e)(1).

Given that the appellant made the patient rape and colostomy disclosures to her supervisor, Dr. D.D., who was responsible for providing evidence to the PSB, and the approximate 4-month delay between these disclosures and the appellant's termination, we find that the appellant nonfrivolously alleged that the patient rape and colostomy disclosures were contributing factors in the agency's decision to terminate her during her probationary period. *See, e.g.*, *Baldwin v. Department of Veterans Affairs*, 113 M.S.P.R. 469, ¶ 26 (2010) (finding that the 4 months between the appellant's disclosure and his termination occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action). The appellant also states, under penalty of perjury, that Dr. D.D. learned the next morning that she reported the patient rape to the police and "berated" her about this disclosure. IAF, Tab 7 at 3, 5, 19. For the same reasons described above, we further find that the appellant has satisfied her burden to make a nonfrivolous allegation of knowledge/timing regarding her patient rape disclosure to the police.

The appellant argues on review that it is not necessary to remand the appeal for further adjudication of these claims. PFR File, Tab 9 at 65 n.34, 68. We disagree. Because the administrative judge did not accept the patient rape and colostomy disclosures for adjudication early in the proceedings, IAF, Tab 13, the

parties likely did not engage in discovery regarding these disclosures. Moreover, the appellant was not given a chance to prove by preponderant evidence that she made her patient rape and colostomy disclosures, or that they were protected and a contributing factor in the agency's decision to terminate her during her probationary period. If the appellant meets this burden, the agency must set forth evidence regarding whether it would have terminated the appellant during her probationary period absent these disclosures, and the appellant is entitled to challenge that evidence or present any countervailing evidence in this regard.

Accordingly, we remand the appeal for the administrative judge to reopen the record for the parties to engage in limited discovery regarding the patient rape and colostomy disclosures and to permit the parties to present evidence and argument, including testimonial evidence, related to (1) whether the appellant proved by preponderant evidence that she made the patient rape and colostomy disclosures, and those disclosures were protected and were a contributing factor in her termination, and (2) whether the agency can prove by clear and convincing evidence that it would have terminated the appellant during her probationary period absent all of the disclosures, including the patient rape and colostomy disclosures. *See, e.g.*, *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶¶ 12-13 (2012) (noting that there are circumstances that arise when the substance of the alleged disclosure, as well as the extent to which the retaliating official was aware of the disclosure, is relevant to retaliatory motive and remanding the appeal for complete adjudication of the issues, including an opportunity for further discovery and submission of documentary evidence and hearing testimony). After conducting the additional proceedings, the administrative judge may reincorporate prior findings as appropriate, consistent with this Remand Order.

## ORDER

For the reasons discussed above, we affirm the administrative judge's conclusion that the agency proved by clear and convincing evidence that it would

have terminated the appellant absent the six disclosures discussed in the initial decision. We also remand this appeal to the Washington Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD: 

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.